# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                    **Case No:   6:18-cv-2194-Orl-22EJK**

JOSEPH D. CORNWELL, JR.,
ROBERT A. LABELLA, JR.,
SOMERSET SHORES
HOMEOWNER'S ASSOCIATION,
INC., DR. PHILIPPS COMMUNITY
ASSOCIATION, INC.,[1] ORANGE
COUNTY TAX COLLECTOR,
JOMICO, LLC, GLORIA LA BELLA
and ROBERT A. LABELLA, JR. AS
PERSONAL REPRESENTATIVE OF
THE ESTATE OF ROBERT
ACCURSIO LABELLA,

       Defendants.

---

## ORDER AND JUDGMENT

This cause comes before the Court on the Motion for Default Judgment against Joseph D. Cornwell, Jr., Dr. Phillips Community Association, Inc. and JOMICO, LLC (Doc. 93), and the Motion for Summary Judgment against Gloria LaBella (Doc. 94), filed by the United States. In this action to enforce the federal tax liens against Joseph D. Cornwell which arose and attached to his property, the United States has reached stipulations or obtained defaults against several of the claimants. The United States now seeks a default judgment against the taxpayer, his alter ego, and the homeowners association, as well as summary judgment against the remaining claimant.

---

[1] The Court treats the incorrect spelling of "Dr. Philipps Community Association, Inc." as a scrivener's error and will enter judgment with the correct spelling based on the corporation's filings with the Florida Secretary of State. *See* https://dos.myflorida.com/sunbiz (visited January 28, 2020).

For the reasons set forth below, the Court finds that the United States has enforceable tax liens on the property belonging to Defendant Joseph Cornwell and his alter ego Defendant JOMICO, LLC, which have attached to the real property at issue and can be foreclosed, resolving the claims of other Defendants as set forth below.

## I. PROCEDURAL & FACTUAL BACKGROUND RELEVANT TO ALL CLAIMS

On December 21, 2018, the United States filed this action against Joseph Cornwell pursuant to 26 U.S.C. § 7402, to reduce to judgment his federal tax liabilities for the tax years ending 2002, 2003 and 2005 (Count I); and to enforce federal tax liens (Count II) against the real property purchased in 2015 located at 7313 Somerset Shores Court, Orlando, Florida 32819 (the "Subject Property") held in the name of his alter-ego, the limited liability company, JOMICO, LLC. (Doc. 1). The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. § 7402. (Doc. 1 ¶ 3).

In addition to the tax payer-Defendant Joseph D. Cornwell, Jr., and his alter-ego JOMICO, LLC, the United States named as Defendants, pursuant to 26 U.S.C. § 7403(b), several entities who could potentially claim an interest in the Subject Property, including: the Orange County Tax Collector; the Somerset Shores Homeowner's Association, Inc.; Dr. Phillips Community Association; and Robert A. LaBella, Jr., in his capacity as Trustee of the Robert A. Labella Revocable Trust UAD 7-14-97 (the "LaBella Revocable Trust"), the seller of the Subject Property.

The Orange County Tax Collector and Somerset Shores Homeowner's Association, Inc. filed Answers to the complaint (Docs. 10, 19), and the United States subsequently reached stipulations with them concerning the priority of their liens resolving their claims. (Docs. 28, 92). Dr. Phillips Community Association did not file an answer the Complaint.

On June 14, 2019, the United States filed an Amended Complaint (Doc. 42) adding as a potential claimant Robert A. LaBella, Jr., in his capacity as the Personal Representative of the

Estate of Robert Accursio LaBella. In response, on June 14, 2019, Robert A. LaBella, Jr. filed his Answer.[2] (Doc. 45). The United States and Robert A. LaBella, Jr., in both of his capacities, subsequently entered into a stipulation regarding the priority of the liens against the Subject Property that resolved those claims. (Doc. 85).

The Amended Complaint also added the potential claimant, Gloria LaBella[3] —the estranged wife of the late Robert A. LaBella—after counsel for the United States received a letter from her claiming an interest in the Subject Property.[4] (Doc. 42). Gloria LaBella filed her Answer to the Amended Complaint on July 22, 2019. (Doc. 63).

On August 30, 2019, the United States filed a Motion seeking a declaration that Defendant Joseph D. Cornwell, Jr. had properly been served with process. (Doc. 81). On December 9, 2019, Magistrate Judge Kidd entered an order finding that substituted service was warranted and properly executed; that Order has not been appealed. (Doc. 96). On December 10, 2019, the Clerk entered a default against Cornwell pursuant to Federal Rule of Civil Procedure 55(a). (Doc. 97). The United States obtained leave of court to serve JOMICO, LLC by publication (Doc. 38), and when it failed to answer, the Clerk entered default against JOMICO, LLC. (Doc. 39). Dr. Phillips Community Association was served with the Complaint on February 19, 2019 (Doc. 16) but failed to answer and the Clerk entered a default against the Association on March 27, 2019. (Doc. 24).

The United States now moves pursuant to Federal Rule of Civil Procedure 55(b) to have final default judgment entered against Defendants Joseph D. Cornwell, Jr., JOMICO, LLC,[5] as well as Dr. Phillips Community Association, Inc. Following discovery on the only remaining

---

[2] The Clerk had previously entered a default against the LaBella Revocable Trust on Count II on June 5, 2019. (Doc. 39).

[3] The letter from Gloria LaBella (also known as "La Bella") was dated May 28, 2019. (Doc. 40-1).

[4] There are apparently two lawsuits pending in state court between Gloria LaBella and Robert A. LaBella Jr.: *In Re: Estate of Robert Accursio LaBella*, Ninth Judicial Circuit, Orange County, Florida, Case No. 2016-CP-3624; *Gloria LaBella v. Robert A. LaBella, Jr., as Personal Representative of the Estate of Robert Accursio LaBella*, Ninth Judicial Circuit, Orange County, Florida, Case No. 17-CA-4293. (*See* Doc. 54).

[5] JOMICO, LLC also appears as JOMICH, LLC in the records of the Florida Secretary of State.

claim, as filed *pro se* by Gloria LaBella, the United States filed a Motion for Summary Judgment (Doc. 94) on October 30, 2019 to resolve on the merits her claims: (1) the Subject Property had been her "marital home" with the late Robert A. LaBella and (2) title documents conveying the Subject Property to JOMICO, LLC were deficient to transfer ownership. (Doc. 63 ¶¶ 6, 15-16).

On November 5, 2019, the Court directed Ms. LaBella to file a response to the Motion for Summary Judgment by December 10, 2019 and warned that her claim could be terminated without further proceedings if she failed to respond. (Doc. 95). Ms. LaBella failed to file a response.

These Motions are now ripe for decision. Because the tax-payer Defendant, his alter ego, and the remaining potential claimants have failed to appear or produce evidence in support of their claims, the Motions will be **GRANTED** and final judgment will be entered against the Defendants.

## II. SUMMARY JUDGMENT & DEFAULT JUDGMENT ON THE CLAIMS

### A. *Final Default Judgment-Cornwell, JOMICO, LLC & Dr. Phillips Comm. Assoc.*

Pursuant to Federal Rule of Civil Procedure 55, before the Court enters final default judgment, the clerk must enter a default when the "party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a); *see also Solaroll Shade & Shutter Corp. v. Bio Energy Sys.*, 803 F.2d 1130, 1134 (11th Cir. 1986) ("Rule 55 applies to parties against who affirmative relief is sought who fail to plead or otherwise defend.") (citation omitted)). After receiving the clerk's default, if the plaintiff's claim is not for a sum certain and the defendant is not an infant or an incompetent person, then the Court can enter a default judgment against the defendant for not appearing. Fed.R.Civ.P. 55(b)(2). A default judgment may be entered "against a defendant who never appears or answers a complaint, for in such circumstances the case never has been placed at issue." *Solaroll*, 803 F.2d at 1134; *DirecTV, Inc. v. Griffin*, 290 F.Supp.2d 1340, 1343 (M.D. Fla. 2003).

Under Federal Rule of Civil Procedure 4(e), service of a federal complaint is accomplished as follows:

> **(e) Service Upon Individuals Within a Judicial District of the United States.** Unless federal law provides otherwise, an individual–other than a minor, an incompetent person, or a person whose waiver has been filed–may be served in a district of the United States by:
>> (1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or
>> (2) doing any of the following:
>>> (A) delivering a copy of the summons and of the complaint to the individual personally;
>>> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>>> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Fed. R. Civ. Pro. 4(e). Under the subsection that deals with service on a corporation, the corporation may be served in the same manner as service on an individual (as in Rule 4(e)(1)) or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." Fed.R.Civ.P. 4(h).

Florida law also permits service on a defendant who conceals his or her identity by serving the Florida Secretary of State. Fla. Stat. §§ 48.161(1), 48.181(1). Section 48.161(1), governing substituted service of an individual, provides in pertinent part:

> When authorized by law, substituted service of process on a . . . person who conceals his or her whereabouts by serving a public officer designated by law shall be made by leaving a copy of the process with a fee of $8.75 with the public officer or in his or her office or by mailing the copies by certified mail to the public officer with the fee. The service is sufficient service on a defendant who has appointed a public officer as his or her agent for the service of process. Notice of service and a copy of the process shall be sent forthwith by registered or certified mail . . . to the defendant, and the defendant's return receipt and the affidavit of the plaintiff or his or her attorney of compliance shall be filed on or before the return day of the process or within such time as the court allows, or the notice and copy shall be served on

the defendant, if found within the state, by an officer authorized to serve legal process, or if found without the state, by a sheriff or a deputy sheriff of any county of this state or any duly constituted public officer qualified to serve like process in the state or jurisdiction where the defendant is found.

Fla. Stat. § 48.161(1). Substituted service in Florida requires that "(1) the plaintiff must send notice of service and a copy of the process by registered or certified mail to the defendant; (2) the plaintiff must file the defendant's return receipt; and (3) the plaintiff must file an affidavit of compliance." *Verizon Trademark Servs., LLC v. Producers, Inc.*, No. 8:10-cv-665-T-33EAJ, 2011 WL 3296812, at *4 (M.D. Fla. Aug. 2, 2011) (citation omitted).

### 1.  *Joseph D. Cornwell, Jr. and JOMICO, LLC*

At the center of this tax liability litigation is Defendant Joseph D. Cornwell, Jr., who has not responded to the Complaint or the Amended Complaint; thus, the United States moved for substitute service under Florida Statute § 48.161. In the Amended Complaint (Doc. 42) and in the Motion for Order to find Cornwell effectively served with process (Doc. 81), the United States explained Cornwell's deliberate attempts to evade service which brought Cornwell within the purview of the Florida substituted service statute. *See* Fla. Stat. § 48.161; *see also* Doc. 96 (citing Doc. 81 (attachments)). Following Cornwell's concerted efforts to evade service, the United States served Cornwell with process on July 22, 2019 through the Florida Secretary of State pursuant to § 48.161. (Doc. 96 (citing Doc. 69)). However, despite the deadline for Cornwell to file an answer to the Amended Complaint within 21 days in the Notice, Cornwell did not file an answer. (Doc. 96).

On the Motion to accept substituted service, the Magistrate Judge found, based on the declarations of the process servers, other documentation, and representations made in the Motion, that the United States reasonably employed knowledge at its command and made a diligent inquiry and effort to serve Cornwell personally and complied with Florida Statute § 48.161. (*Id.*). Specifically, he found that Cornwell had clearly been concealing his whereabouts and otherwise

making service of process impossible; the United States had met its burden to demonstrate Cornwell was evading service; and that the failure to obtain a return receipt from Cornwell would not render the substituted service void. (*Id.* at 5). "In its quest to personally serve Cornwell, the United States spoke with Cornwell's son and ex-wife (Doc. 81 at 6), attempted to serve him at addresses found from Cornwell's identifying information (*id.* at 3) and discovered that Cornwell refused to accept mail at several addresses (*id.* at 15)." The Magistrate Judge found that substituted service was warranted and properly executed because the United States had undertaken a diligent effort to serve Cornwell, had demonstrated that he was evading service, and had complied with Florida Statute § 48.161. (Doc. 96 at 5). The Clerk entered default against Joseph D. Cornwell the following day, on December 10, 2019. (Doc. 97).

As to JOMICO, LLC on April 3, 2019, the United States obtained leave of Court to serve the Complaint by publication upon Defendant JOMICO, LLC based on unsuccessful efforts to personally serve it with process. (Doc. 26). As the Magistrate Judge noted, under federal law, an action to enforce a lien in district court "where any defendant cannot be served within the State, or does not voluntarily appear, the court may order the absent defendant to appear or plead by a day certain. Such order shall be served on the absent defendant personally if practicable, wherever found, and also upon the person or persons in possession or charge of such property, if any. Where personal service is not practicable, the order shall be published as the court may direct, not less than once a week for six consecutive weeks." 28 U.S.C. § 1655.

Then, "[i]f an absent defendant does not appear or plead within the time allowed, the court may proceed as if the absent defendant had been served with process within the State, but any adjudication shall, as regards the absent defendant without appearance, affect only the property which is the subject of the action." *Id.* "Any defendant not so personally notified may, at any time within one year after final judgment, enter his appearance, and thereupon the court shall set aside

the judgment and permit such defendant to plead on payment of such costs as the court deems just." *Id.* This statute is only available for *in rem* claims, "[a] mere *in personam* claim will not suffice to support service under the statute." *Harrison v. Prather*, 404 F.2d 267, 269 (5th Cir. 1968). Suit to force a 26 U.S.C. § 7403 sale of property to satisfy federal tax liens is an *in rem* proceeding. *United States v. Rodgers*, 461 U.S. 677, 695, 702, 103 S.Ct. 2132, 76 L.Ed.2d 236 (1983).

Section 1655 does not include any conditions precedent that must be satisfied before its use is permitted. Cases that have construed 28 U.S.C. § 118, the predecessor of § 1655, hold that before service can be made "three essential requisites must have been fulfilled: (1) the suit must be one to enforce a legal or equitable lien upon, or claim to, the title to real or personal property, or to remove some encumbrance, lien or cloud upon the title of such property; (2) the proceeding must be in aid of some preexisting claim, existing prior to the suit in question, and not a proceeding to create for the first time a claim to the property as the effect of the proceeding itself; (3) the property in question must have a situs within the district in which suit is brought in a federal district court." *McQuillen v. National Cash Register Co*., 112 F.2d 877, (4th Cir. 1940). Because the Magistrate Judge found that all three of the conditions had been satisfied, he granted the United States' Motion to serve JOMICO, LLC by publication. (Doc. 26). The United States then published a copy of the Order in the Orlando Sentinel, a newspaper of general circulation in Orange County, Florida, not less than once a week for six consecutive weeks, directing JOMICO, LLC to file an answer on or before two weeks from the last day of publication.[6] The United States filed proof of publication, which includes the affidavit of the publisher's representative (Doc. 38-1). Defendant JOMICO, LLC was ordered to appear and plead by the effective date of May 30, 2019, however,

---

[6] The pertinent portion of the published notice stated: JOMICO, LLC . . . [is] hereby directed to appear, plead, answer or otherwise move, with respect to Plaintiff's complaint on or before two weeks after the last day for publication of this Order or be in default thereof." (Doc. 38-1 at 4).

JOMICO, LLC failed to file an answer by that date. The United States moved for entry of a clerk's default (Doc. 38), and the Clerk entered default against JOMICO, LLC on Count II (the only count against it) on June 5, 2019. (Doc. 39).

### 2. Dr. Phillips Community Association

Service of process on the potential claimant, Defendant Dr. Phillips Community Association, was completed on February 19, 2019 at its place of business located at 7400 Dr. Phillips Boulevard, Orlando, Florida 32819, by service on Troy Finnegan as General Counsel for the Association. (Doc. 16). Service on general counsel constitutes service on a "managing or general agent" as required under Federal Rule of Civil Procedure 4(h)(1)(B). *See American Centennial Ins. Co. v. Handal*, 901 F.Supp. 892 899 (D.N.J. 1995) (holding that general counsel for a corporation constitutes a "managing or general agent" of a corporation who is authorized to accept service of process and can agree to waiver under Rule 4 governing service on corporations).

Service on general counsel as an agent of the Association also satisfies the requirements of the Florida Statutes, applicable under Rule 4(h)(1)(A), which allows service for a corporation:

(a) On the president or vice president, or other head of the corporation;

(b) In the absence of any person described in paragraph (a), on the cashier, treasurer, secretary, or general manager;

(c) In the absence of any person described in paragraph (a) or paragraph (b), on any director; or

(d) In the absence of any person described in paragraph (a), paragraph (b), or paragraph (c), *on any officer or business agent residing in the state*.

Fla. Stat. § 48.081(3)(a)(emphasis added); *Int'l Steel Truss Co. v. Artec Grp., Inc.*, 824 So. 2d 340, 342 (Fla. 2d DCA 2002) ("[a] business agent as contemplated by the law . . . means . . . one having general authority to act for the corporation within the state. Its duties must be closely related to the duties of the officers of the corporation."); *Dade Erection Service, Inc. v. Sims Crane Service, Inc.*, 379 So.2d 423 (Fla. 2d DCA 1980) ("For purposes of service of process, a business agent has been

held to be the person who represents the corporation and who officially speaks for it in the local business affairs of the corporation."). Thus, Dr. Phillips Community Association was properly served and its answer was due on or before March 12, 2019; however, the Association failed to file any answer. Fed. R. Civ. P. 12(a)(1)(A)(i). Accordingly, the Clerk's entry of default against Dr. Phillips Community Association on March 27, 2019 was proper. (Doc. 24). Because Dr. Phillips Community Association has not asserted a claim to the Subject Property by failing to file an answer or other pleading, the Court will enter judgment that Dr. Phillips Community Association has no interest in the Subject Property and is not entitled to any proceeds upon the sale of the Subject Property.

### B. Summary Judgment

#### 1. Standard

A court should grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). It is the movant who bears the initial burden of "identifying for the district court those portions of the record 'which it believes demonstrates the absence of a genuine issue of material fact.'" *Cohen v. United Am. Bank of Cent. Fla.*, 83 F.3d 1347, 1349 (11th Cir. 1996) (quoting *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1396, *modified on other grounds*, 30 F.3d 1347 (11th Cir. 1994)). In determining whether a genuine issue for trial exists, "courts must construe the facts and draw all inferences in the light most favorable to the nonmoving party . . . [e]ven though the facts accepted at the summary judgment stage of the proceedings may not be the actual facts of the case." *Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006) (internal citations and quotations omitted). The Court is not, however, required to accept all of the nonmovant's factual characterizations and legal arguments. *Beal v. Paramount Pictures Corp.*, 20 F.3d 454, 458-59 (11th Cir. 1994). If material issues of fact exist, the Court must not decide them, but rather,

must deny the motion and proceed to trial. *Herzog v. Castle Rock Entertainment*, 193 F.3d 1241, 1246 (11th Cir. 1999).

Summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Summary judgment may be granted if the non-moving party's evidence is merely colorable or is not significantly probative." *Sawyer v. Southwest Airlines Co.*, 243 F.Supp.2d 1257, 1262 (D. Kan. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).

"[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249. A dispute or "issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. An issue is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). "Essentially, the inquiry is 'whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Sawyer*, 243 F.Supp.2d at 1263 (quoting *Anderson*, 477 U.S. at 251-52).

The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed.R.Civ.P. 56(c)(1)(A) & (B). If the non-movant "fails to properly

address another party's assertion of fact" as required by Rule 56(c), then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed.R.Civ.P. 56(e)(2) & (3).

Even if a motion for summary judgment is unopposed, the movant must nevertheless show it is entitled to judgment on the merits, based on evidentiary materials in the record. *See Dunlap v. Transam. Occidental Life Ins. Co.*, 858 F.2d 629, 632 (11th Cir. 1988) (district court did not err in treating motion for summary judgment as unopposed where it considered the merits of the motion). The district court "need not *sua sponte* review all of the evidentiary materials on file at the time the motion is granted," but it must at least review all those submitted in support of the summary judgment motion, and it must indicate that the merits were considered. *United States v. 5800 S.W. 74th Ave.*, 363 F.3d 1099, 1101-02 (11th Cir. 2004).

### 2. Gloria LaBella

The United States argues that summary judgment is warranted on Gloria LaBella's claimed interest in the Subject Property as the "surviving spouse" of Robert LaBella. (Doc. 94). In her Answer to the Amended Complaint, Ms. LaBella contends that Cornwell and JOMICO, LLC do not have a "right" to the Subject Property because "as the surviving spouse" she has the "right of occupancy of [the] martial residence"; the deed transferring title is "false" and "contrary to administrative rules" because it was executed to the "non-existent" entity JOMICO, LLC; and the promissory note securing the sale was deficient. (Doc. 63 ¶¶ 6, 15-16). However, despite the issues she raised in her Answer, Ms. LaBella failed file a response to the United States' Motion for Summary Judgment and, thus, has failed to set forth any evidence in support of her claim to the Subject Property.

The history of the transfer of the property, as it relates specifically to Ms. LaBella's claims is as follows. On September 19, 1989, Robert Accursio LaBella acquired the Subject Property from Somerset Shores Partnership by Warranty Deed for the sum of $10.00. (Doc. 93-14, Decl. Pascale Guerrier). The deed was recorded in the public records of Orange County, Florida on October 2, 1989. (*Id*.). On July 14, 1997, when Robert Accursio LaBella created the Robert A. Labella Revocable Trust UAD 7-14-97, he named himself as both donor and Trustee; he named Robert A. LaBella, Jr. as a beneficiary, but he did not name Gloria LaBella (Doc. 93-18) because she had not yet met Robert A. LaBella. (Doc. 94-2). Two weeks after creating the Revocable Trust, on August 1, 1997, Robert Accursio LaBella transferred the Subject Property to the LaBella Revocable Trust by Warranty Deed for the sum of $10.00, which was recorded the same day. (Doc. 93-15).

Gloria LaBella and Robert Accursio LaBella were married on April 8, 2005. (Doc. 94-2 at 14-15; Doc. 87-1 at 5). Prior to the marriage, Gloria LaBella and Robert Accursio LaBella executed a Prenuptial Agreement dated March 12, 2005. (Doc. 94-2 at 43-45). The Prenuptial Agreement provides in pertinent part:

> 4. Each party agrees to waive, release, relinquish and forgo, any and all right, title, claims or interest of every kind and description of the other's estate as a result of the subsequent death of either of them after the marriage, including the right to act as an executor or administrator of the other's estate [w]ith exception of [paragraph] number 7 [in which] Robert [agrees he] will bequeath Gloria $500,000 upon his death. Without in any way limiting the foregoing, this provision is intended to and shall serve as a waiver and release of each party's right of election in accordance with the requirements of Florida state law and any law of any other jurisdiction.

> 5. Each of the parties agree that all respective assets set forth in Schedules A and B, the appreciation of any such assets, and anything that either of them may inherit hereafter, shall be treated as separate property under Florida State law and each expressly agrees never to assert a claim of any kind to the assets or income derived from the respective businesses, occupations and any appreciated value thereof.

> . . .

14. Both parties represent that they have consulted attorneys of their choosing, who have counseled them concerning all aspects of this Agreement.

(Doc. 94-3). The Prenuptial Agreement contains a provision referring to a "marital residence" which, it turns out, was never purchased:

6. The marital residence to be purchased primarily from Robert's funds shall be owned jointly with right of survivorship. In the event of a divorce Gloria will be able to live in the house for a year with Robert paying all the bills, and then a sale with the proceeds going equally to Robert and Gloria.

(*Id.*). Nearly nine years after creating the LaBella Revocable Trust, on May 25, 2006, the Trust was amended in part to incorporate the Prenuptial Agreement between Robert Accursio LaBella and Gloria LaBella. (Doc. 93-18 at 14-17). The 2006 amendment names Gloria LaBella as a "Disinherited Spouse" with the "exception of her receipt of the sum of $500,000 which is strictly conditioned upon her being married to the Donor at the time of his death and living with the Donor at the time of his death." (*Id.* at 14-15). On April 1, 2013, the LaBella Revocable Trust was amended a second time by Robert Accursio LaBella; however, Gloria LaBella was not added as a beneficiary of the LaBella Revocable Trust after these amendments. (*Id.* at 18-20).

On August 24, 2015, Gloria LaBella filed a petition for dissolution of marriage against Robert Accursio LaBella in Orange County Circuit Court, Case No. 2015-DR-13334-O. (Doc. 94-4 ¶ 8). On September 21, 2016, Robert Accursio LaBella died. (*Id.* ¶ 9; Doc. 94-2 at 18). The divorce proceeding filed by Gloria LaBella that was pending at the time of Robert Accursio LaBella's death terminated because no final order or adjudication occurred prior to Robert Accursio LaBella's death. (Doc. 94-2 at 18-19; Doc. 94-4 ¶ 9).

The evidence filed by the United States shows that Robert Accursio LaBella purchased the Subject Property in 1989, nearly sixteen years prior to his marriage to Gloria LaBella in April 2005. He then transferred the Subject Property into the LaBella Revocable Trust in 1997, eight years prior to his marriage to Gloria LaBella in 2005. Twenty-five years after Robert Accursio

LaBella first acquired the Subject Property, and eighteen years after the transfer of the Subject Property to the LaBella Revocable Trust in 1997, the LaBella Revocable Trust conveyed the Subject Property by Trustee's Deed on January 5, 2015 to defendant JOMICO, LLC for the sum of $10.00 and other valuable consideration. (Doc. 93-16).

As part of the transaction, JOMICO, LLC and Joseph Cornwell executed a promissory note concerning the Subject Property, and JOMICO, LLC executed and delivered a purchase money mortgage securing the payment to the LaBella Revocable Trust in the amount of $330,000.00. (Doc. 93-17). The deed, the mortgage and the promissory note were recorded in the public records of Orange County, Florida on January 15, 2015. (Docs. 93-16, 93-17). Gloria LaBella did not pay the property taxes, the homeowner's association fees, or any mortgage payments regarding the Subject Property. (Doc. 94-2 at 32-33; Doc. 63 ¶¶ 1, 9; Doc. 87). JOMICO, LLC paid the mortgage and association fee concerning the Subject Property in 2015, 2016 and 2017. (Docs. 93-6 to 93-10).

At some point, the mortgage payments were not being paid. On March 16, 2018, the LaBella Revocable Trust, as owner and holder of the promissory note and first mortgage on the Subject Property, filed a "Verified Complaint to Foreclose Mortgage" against JOMICO, LLC in the Circuit Court of the Ninth Judicial Circuit for Orange County Florida. (Case No. 2018-CA-002874). On July 6, 2018, the LaBella Revocable Trust filed a "Plaintiff's Notice of Voluntary Dismissal Without Prejudice and Discharge of Lis Pendens."

Gloria LaBella did not live at the Subject Property in 2015 when it was transferred by the LaBella Revocable Trust to JOMICO, LLC and she did not provide any funds towards the purchase of the Subject Property. (Doc. 94-2 at 41). She has asserted in court filings that the Subject Property was owned by the LaBella Revocable Trust during her marriage to Robert Accursio LaBella. (Doc.

94-4 ¶ 7). She has also asserted that "Robert failed to purchase. . . a marital residence to be owned jointly with right of survivorship with Gloria." (Doc. 94-4 ¶ 11).

Under Florida law, property acquired before marriage by either spouse is considered non-marital property and assets acquired "during the marriage, individually by either spouse or jointly by them" is considered marital property. Fla. Stat. § 61.075(6). In addition, "[a]ssets acquired separately by either party by non-interspousal gift, bequest, devise, or descent and assets acquired in exchange for such assets" are also considered non-marital assets. *Id.* When nonmarital property is received as separate property and held separately, it retains its status as non-marital property. *Farrior v. Farrior*, 736 So. 2d 1177, 1179 (Fla. 1999) (holding that the status of non-marital inherited stock did not change during the marriage where it was never commingled and it continued to be a nonmarital asset at the time of the dissolution). Where non-marital property is conveyed into a revocable trust, it retains its character as separate property. *See, e.g., In re Starkman*, 129 Cal. App. 4th 659 (Cal. 2d DCA May 2005) (husband's separate property placed in a family trust was not transmuted into marital or community property).

The United States further argues that Gloria and Robert LaBella's divorce proceeding was never completed, therefore, Ms. LaBella had no legal interest in the marital assets because title is neither created nor vested absent judgment by a court in a dissolution of marriage proceeding. (Doc. 94 (citing *United States v. Kermali*, 60 F. Supp. 3d 1280, 1283 (M.D. Fla. 2014) & Fla. Stat. § 61.075(8) ("Title to disputed assets shall vest only by the judgment of a court.")). Because a final judgment vesting such interest had not been entered in the divorce proceeding, Ms. LaBella did not have a vested or legal interest. *Kermali*, 60 F. Supp. 3d at 1283; *United States v. Barber*, 2014 WL 5473570, at *3 (M.D. Fla. 2014) (holding in a federal forfeiture proceeding that § 61.075 applied to a "dissolution of marriage proceeding to determine the distribution and ownership of assets upon divorce" but did not vest title to the assets during the marriage).

Before transfer of the Subject Property from the LaBella Revocable Trust to JOMICO, LLC, it was the separate property of Robert Accursio LaBella and subsequently owned by the LaBella Revocable Trust; Gloria LaBella admits she had no legal interest in the Subject Property. At her deposition, Gloria LaBella conceded that she made no payments towards the purchase of the Subject Property and that the Subject Property was never held in her name. In other court filings, she has admitted that the Subject Property was owned by the LaBella Revocable Trust during her marriage. Generally, "a party is bound by the admissions in h[er] pleadings" and cannot introduce evidence to attempt to contradict a judicial admission. *Cooper v. Meridian Yachts, Ltd.*, 575 F.3d 1151, 1177 (11th Cir. 2009).

The United States argues that Gloria LaBella voluntarily and unambiguously waived any interest she might have had in the Subject Property because, assuming arguendo the property could have been considered marital property, by entering the Prenuptial Agreement, she voluntarily waived all interest in the estate of Robert Accursio LaBella upon his death in 2016. Under Paragraph 4 of the Prenuptial Agreement, Gloria LaBella agreed to "waive, release, relinquish and forgo, any and all right, title, claims or interest of every kind and description of the other's estate as a result of the subsequent death of either of them after the marriage."

Parties to a premarital agreement may contract regarding the disposition of property upon marital dissolution. Fla. Stat. § 61.079(4)(a). Thus, even if the property were considered marital property, Gloria LaBella has voluntarily and unambiguously waived all interest in it through the Prenuptial Agreement. [7] *Hahamovitch v. Hahamovitch*, 174 So. 3d 983, 986 (Fla. 2015)

---

[7] The United States points out that, within the terms of the Prenuptial Agreement, the parties agreed to the future purchase of a "marital residence" during the marriage. (Doc. 94-3 at 1 ¶ 6 ("The marital residence to be purchased primarily from Robert's funds shall be owned jointly with right of survivorship.")). The specific mention of the intention to purchase a property not yet owned demonstrates that the Subject Property was never intended by either party as a "marital residence" because they both agreed that the marital home would be purchased in the future. Ms. LaBella has asserted in court filings that Robert Accursio LaBella failed to purchase the promised marital home during the marriage, thus, consistent with that reasoning the Subject Property was not the "marital home" referred to in the Prenuptial Agreement. (Doc. 94-3).

(upholding prenuptial agreement where wife waived and released any and all rights and claims to all property solely owned by the husband at the time of the agreement or acquired in the future). Because the Subject Property was Robert Accursio LaBella's separate property before it was transferred into the LaBella Revocable Trust, and Ms. LaBella waived any potential claim she might have made to the Subject Property in the Prenuptial Agreement, the Court finds that Gloria LaBella did not own an interest in the Subject Property at the time it was transferred to JOMICO, LLC.

Lastly, the United States argues there is no merit to Ms. LaBella's claim that the transfer of the Subject Property from the LaBella Revocable Trust to JOMICO, LLC was "false" or implicitly fraudulent because she cannot show that the Subject Property was her marital home, or that she is a creditor, or that the conveyance of the Subject Property was fraudulent as to her. As the Court has explained above, Ms. LaBella has failed to produce any evidence that the Subject Property was her marital home or that she is a creditor of the LaBella Revocable Trust; instead, the evidence the United States has submitted is to the contrary. *See Wiand v. Lee*, 753 F.3d 1194, 1199-1200 (11th Cir. 2014); *see also* Fla. Stat. § 726.105(1)(a) (under the Florida Uniform Fraudulent Transfer Act, a transfer is fraudulent when a "debtor made the transfer . . . [w]ith actual intent to hinder, delay or defraud any creditor of the debtor.").

The Court will enter judgment that Gloria LaBella has no interest in the Subject Property and is not entitled to any proceeds upon the sale of the Subject Property.

## III.     CALCULATION OF TAX LIABILITY OF CORNWELL

The Court finds that Defendants' failure to timely respond to the Complaint and subsequent entry of default served to admit the well pleaded allegations of the United States' Complaint, including Defendant Cornwell's liability for the federal income tax owed. *See, e.g., Cotton v. Massachusetts Mut. Life Insurance Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) (in defaulting,

defendants "admit the plaintiff's well-pleaded allegations of fact"); *Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (same).

Notwithstanding the entry of a default by the clerk, "a defendant's default does not in itself warrant the court in entering a default judgment." *Nishimatsu Constr. Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). Therefore, the court must evaluate whether it is proper to enter a default judgment. For example, if a defendant never appears or answers a complaint, then the "case never has been placed at issue[,] and thus, the court may enter a default judgment." *Solaroll Shade*, 803 F.2d at 1134. However, prior to entering a default judgment, the court must verify that the complaint is well pleaded because "[a] 'defendant, by his default, admits the plaintiff's well pleaded allegations of fact, and is barred from contesting on appeal the facts thus established.'" *Eagle Hosp. Physicians, LLC v. SRG Consulting, Inc.*, 561 F.3d 1298, 1307 (11th Cir. 2009) (citations omitted); *Nishimatsu Constr. Ltd.*, 515 F.2d at 1206 ("There must be a sufficient basis in the pleadings for the judgment entered.").

To determine if a plaintiff's complaint is well pleaded, the court considers Rule 8(a)(2) of the Federal Rules of Civil Procedure and the standard set forth in *Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) (explicating *Bell Atl. Corp v. Twombly*, 127 S.Ct. 1955 (2007)). According to Federal Rule of Civil Procedure 8(a)(2), to state a claim for relief, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Thus, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 127 S.Ct. at 1947). In other words, the allegations in the complaint need to be sufficient "to 'raise a right to relief above the speculative level' on the assumption that all the allegations in the complaint are true." *Bingham v. Thomas*, 654 F.3d 1171, 1175 (11th Cir. 2011) (per curiam) (citing *Twombly*, 127 S.Ct. at 1965). Moreover, "[t]hreadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 129 S.Ct. at 1949 (citation omitted).

As alleged in the Amended Complaint in this case, Joseph Cornwell was required but failed to file federal income tax returns for the tax years 2002, 2003 and 2005 with the Internal Revenue Service and failed to pay any taxes for those years. (Doc. 42, Am. Compl. ¶ 17). After Cornwell failed to file and pay his federal taxes, a delegate of the Secretary of the Treasury conducted an audit of those tax years and made assessments against Cornwell for the unpaid income taxes, penalties, and interest. (*Id.*).

A tax "assessment" is an administrative determination by the IRS of a tax liability and a procedure in which the IRS records the liability of the taxpayer in IRS files. See 26 U.S.C. § 6203. Generally, an assessment of federal tax by the Internal Revenue Service is presumed valid if supported by a Certificate of Assessments, Payments, and Other Specified Matters ("Form 4340"), and the assessment "amounts to an IRS determination that a taxpayer owes the [f]ederal [g]overnment a certain amount of unpaid taxes." *United States v. Stein*, 881 F.3d 853, 855 (11th Cir. 2018) (citing *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 242, 122 S.Ct. 2117, 153 L.Ed.2d 280 (2002)). This "legal presumption of correctness . . . can help the [g]overnment prove its case against a taxpayer in court." *See, e.g., United States v. White*, 466 F.3d 1241, 1248 (11th Cir. 2006) (holding that the Government's submission of a Form 4340 establishes a presumption that the assessment was properly made); *United States v. Chila*, 871 F.2d 1015, 1018 (11th Cir. 1985) ("Certificate of Assessments . . . provide[s] all the information called for in the statute, *i.e.*, identification of the taxpayer, the character of the liability assessed, the taxable period, and the date and amount of the assessment. . . [and] is presumptive proof of a valid assessment."). A court may also rely on the sworn declaration of a revenue officer to conclude that a balance remains due on these assessments. *See, e.g., United States v. Hall*, No. 13-326, 2013 WL 6844099, at *8 (S.D.

Ala. Dec. 30, 2013). A taxpayer has the burden of overcoming the presumption of correctness by proving that the method of computing the tax, and therefore the assessment, is arbitrary and without foundation. *Olster v. Commissioner*, 751 F.2d 1168, 1174 (11th Cir. 1985) (citing *Mersel v. United States*, 420 F.2d 517, 520 (5th Cir. 1970)). The purpose of an assessment is "to insure that a proper record is kept in order to avoid slipshod tax accounting practices and to insure that taxpayers may receive a summary of tax records pertaining to their tax liability." *United States v. Charboneau*, 2006 WL 2346280 (M.D. Fla. 2006) (citation omitted).

The presumption extends to penalties and interest arising as a result of unpaid taxes, which are statutorily considered "taxes" for the purposes of tax assessment. 26 U.S.C. § 6665(a)(2). The Certificate of Assessments is self-authenticating and otherwise admissible under the Federal Rules of Evidence. *Chila*, 871 F.2d at 1018. Once the United States has established that its assessments are valid through the submission of Certificates of Assessment, the burden then shifts to the taxpayer to show that the government's assessments are arbitrary or incorrect. *United States v. White*, 466 F.3d 1241, 1248 (11th Cir. 2006).

The Certificates of Assessment submitted in this case identify Cornwell by name and (partial) social security number, specify that the tax liability pertains to a "Form 1040"-*i.e.*, federal income tax payments, identify each tax year for which a liability has been assessed, and provide the date and amount of each assessment, payment, credit, penalty and accrued interest. The Certificates of Assessments at issue suffice as a matter of law to prove that the IRS made its assessments against Cornwell on the dates and in the amounts listed therein, and that it made those assessments according to the requirements of the Internal Revenue Code. *See Chila,* 871 F.2d at 1018. However, since Cornwell failed to appear or otherwise defend this action, he cannot overcome the presumption of correctness of the tax, penalties and interest against him. *Id*.

In this case, a delegate of the Secretary of the Treasury assessed income tax liabilities against Cornwell for tax years 2002, 2003, and 2005 after conducting an audit, and the United States has submitted presumptively correct Certificates of Assessment for all those tax years. (Doc. 42-1 ¶¶ 7-8; Doc. 93-1). The Secretary of Treasury filed a Notice of Federal Tax Lien on November 23, 2010 against Joseph D. Cornwell individually for the unpaid federal income tax liabilities for the tax years 2002, 2003 and 2005. (Doc. 42 ¶ 28; Doc. 93-1 ¶ 10; Doc. 93-5).

Revenue Officer Jackson, who has personal knowledge of the assessments against Cornwell, has verified that the Account Transcripts[8] attached to her Declaration are true and accurate and that they show the federal income tax assessments against Cornwell. (Doc. 93-1 ¶¶ 7-8; Doc. 93-2; Doc. 93-3). Thus, the assessments made against Cornwell are presumptively valid. *United States v. Bennett*, 2011 WL 7090744, * 3-*5 (M.D. Fla. June 7, 2011). The calculations as of January 5, 2009, as set forth in the Jackson Declaration are as follows:

| Tax Year | Assessed Tax | Failure to Prepay Tax Penalty | Late Filing Penalty | Late Payment Penalty | Interest |
|---|---|---|---|---|---|
| 2002 | $126,663.00 | $4,232.71 | $28,499.18 | $31,665.75 | $64,877.00 |
| 2003 | $98,951.00 | $2,553.06 | $22,263.98 | $24,737.75 | $43,168.77 |
| 2005 | $130,742.00 | $5,244.27 | $29,416.95 | $21,572.43 | $34,589.54 |
| Total | $356,356.00 | $12,030.04 | $80,180.11 | $77,975.93 | $142,635.31 |

(Doc. 93-1 ¶¶ 7-8). A delegate of the Secretary of the Treasury gave notice of the assessments described above to Cornwell and made demands for payment. (Doc. 42 ¶ 17). Despite notice and demand, Cornwell has not paid the federal tax liabilities assessed against him and has not challenged those assessments. (Doc. 42 ¶ 18). Because Cornwell has not appeared in this action to

---

[8] The IRS routinely uses the INTST module to track up-to-date interest and failure-to-pay penalty calculations for a tax period where the taxpayer owes a balance, as Revenue Officer Jackson did in this case. (Doc. 93-1). After confirming the assessments attested to in her Declaration, Jackson used the INTST module in the IRS Integrated Data Retrieval System to compute the unpaid balance of those assessments, plus accrued interest and statutory additions through October 30, 2019, for each tax year at issue. (*See* Doc. 93-1, 93-2, 93-3).

rebut the presumption that the assessments against him are correct, judgment will be entered against Cornwell.

After confirming the assessments made in the respective years set forth in the table above, Revenue Officer Jackson, who has personal knowledge of the assessments against Cornwell, has verified the federal income tax assessments against Cornwell: as of October 30, 2019, the outstanding balance of the tax liability and penalties assessed against Cornwell for the tax years 2002, 2003, and 2005 totals $1,021,304.36, plus statutory additions including interest that continues to accrue until full payment, as set forth below:

| Tax Period | Payoff |
|---|---|
| 2002 | $385,194.32 |
| 2003 | $288,324.04 |
| 2005 | $347,786.00 |
| **Total** | **$1,021,304.36** |

(Doc. 93-1 ¶¶ 8-9). Accordingly, judgment will be entered against Cornwell for $1,021,304.36, plus accrued statutory additions from October 30, 2019 to the date of payment in full.

## IV.    FEDERAL TAX LIEN AGAINST THE ALTER EGO JOMICO, LLC

The United States contends that the lien for the unpaid federal taxes attached to the Subject Property, owned by Joseph Cornwell's alter ego, JOMICO, LLC. On the dates of the assessments listed above, federal tax liens arose and attached to Cornwell's property and Cornwell's rights to property in favor of the United States. *See* 26 U.S.C. §§ 6321, 6322. Cornwell formed the limited liability company of JOMICO, LLC, which first became authorized to transact business in the State of Florida on January 5, 2015. (Doc. 42 ¶ 7; Doc. 93-12). On January 5, 2015, Cornwell used personal funds (which were encumbered by tax liens) to purchase the Subject Property through JOMICO, LLC. As a result, the tax liens which arose from the assessments occurring prior to January 5, 2015 attached to the Subject Property held by JOMICO, LLC.

Additionally, a federal tax lien not only affects all property and rights to property of the delinquent taxpayer but also reaches property in the hands of the taxpayer's alter ego. *Shades Ridge Holding Co. v. United States*, 888 F.2d 725, 728 (11th Cir. 1989); *Eckhardt v. United States*, 463 F. App'x 852, 855 (11th Cir. 2012) (under Florida law, alter ego liability is determined using the same standard used to pierce the corporate veil); *see Old W. Annuity & Life Ins. Co. v. Apollo Grp.*, 605 F.3d 856, 862 (11th Cir. 2010) (Florida law governs the determination of alter ego status in the context of federal tax liabilities). An "important factor relevant to whether an individual dominates the corporation to such an extent as to negate its separate identity is whether corporate funds were used for the individual's benefit." *Eckhardt*, 463 F. App'x at 856. Likewise, "[t]he veil will be pierced and the corporate entity disregarded if it is shown 'that the corporation is formed or used for some illegal, fraudulent or other unjust purpose which justifies piercing the corporate veil.'" *Id.*; *Shades Ridge Holding Co.*, 888 F.2d at 728 (holding corporation liable for taxpayer's debt applying federal common law).

JOMICO, LLC holds title to the Subject Property as Cornwell's alter ego as illustrated by the following: Cornwell is the 100% owner of JOMICO, LLC and exercises dominion and control over JOMICO, LLC as the "Managing Member." (Doc. 42 ¶¶ 19-20; Doc. 93-12 (JOMICO, LLC's Application for Authorization to Transact Business in Florida filed with the Florida Secretary of State)). Cornwell granted a mortgage on the Subject Property as JOMICO, LLC's Managing Member (Doc. 93-17). In addition, Cornwell and JOMICO, LLC's finances are co-mingled. Cornwell is the sole signatory to JOMICO, LLC's corporate accounts, including JOMICO, LLC's Bank of America account ending with the last four digits of 4297. (Doc. 42 ¶ 20; Doc. 93-1 ¶ 14, Doc. 93-6 to 93-11).

Cornwell disregarded the corporate formalities of JOMICO, LLC and improperly used JOMICO, LLC's corporate account for his personal benefit. (Doc. 42 ¶¶ 21-27). JOMICO, LLC

has failed to follow corporate formalities, including failing to file an annual report, according to the Florida Secretary of State's records.[9] As a result, on September 23, 2016, the Florida Secretary of State administratively revoked JOMICO, LLC's status. The Internal Revenue Service has no record of an Employer Identification Number being issued to JOMICO, LLC or any federal tax returns being filed by or on behalf of JOMICO, LLC. (Doc. 93-1 ¶¶ 12-13).

Between 2013 and 2017, more than $900,000 was deposited into JOMICO, LLC's Bank of America corporate account ending in 4297 from a JOMICO, LLC Bank of America account ending in 8032, a JP Morgan Chase Bank account from another entity owned by Cornwell, as well as other sources. (Doc. 42 ¶ 21; Doc. 93-5). Most of these funds were used to pay Cornwell's personal expenses or for his personal benefit. Cornwell withdrew $200,000 from JOMICO, LLC's "corporate" account in 2013 to send to two investment firms for his personal benefit ($100,000 to National Finance Service and $100,000 to Fidelity Group Investments). (Doc. 42 ¶ 22; Doc. 93-6 to 93-11). Cornwell additionally withdrew more than $300,000 from JOMICO, LLC's "corporate" account between 2013 and 2017 for personal use as cash withdrawals, high-end department store purchases, vacations in Las Vegas and California, entertainment, car payments/Lexus purchase, wines and spirits, restaurant meals, home improvement purchases, payments for personal hygiene products, and other expenses on personal credit cards. (Doc. 42 ¶ 23; Doc. 93-6). Cornwell also made payments totaling more than $10,000 to his ex-wife. Additionally, Cornwell transferred more than $132,000 from JOMICO, LLC's corporate account to a different company he owns (Global Waters) for his personal benefit. (Doc. 42 ¶ 24; Doc. 93-6 to 93-11; Doc. 93-13).

Based upon Cornwell's improper use of JOMICO, LLC's corporate account for his personal benefit, on May 7, 2018, the Secretary of Treasury filed a Notice of Federal Tax Lien against "JOMICO as an alter ego of Joseph D. Cornwell" for the unpaid federal income tax

_____
[9] *See* https://dos.myflorida.com/sunbiz (search for JOMICO, LLC; visited January 28, 2020).

liabilities for the tax years 2002, 2003 and 2005 (subsequent to the Notice against Cornwell individually filed in November 23, 2010). (Doc. 42 ¶ 27; Doc. 93-1 ¶ 11; Docs. 93-4). Based on the above, the IRS has demonstrated that JOMICO, LLC is a shell utilized by Cornwell to hide his property from collection and that Cornwell is the true and equitable owner of the Subject Property.

## V. FORECLOSURE AGAINST THE SUBJECT PROPERTY

The United States seeks to enforce federal tax liens against Cornwell's interest in the Subject Property, held in the name of JOMICO, LLC as Cornwell's alter-ego. (Doc. 42 ¶ 14). On January 5, 2015, JOMICO, LLC acquired title to the Subject Property from the LaBella Revocable Trust[10] by Trustee's Deed for the sum of $10.00 and other valuable consideration. (Doc. 42 ¶ 15; Doc. 93-16 (Trustee's Deed)). On January 5, 2015, JOMICO, LLC and Cornwell executed a promissory note concerning the Subject Property, and JOMICO, LLC executed and delivered a purchase money mortgage securing the payment of the promissory note to the LaBella Revocable Trust in the amount of $330,000.00. The deed and the mortgage were recorded in the public records of Orange County, Florida on January 15, 2015. (Doc. 42 ¶ 16; Doc. 93-17 (mortgage and promissory note)).

The Internal Revenue Code provides in pertinent part that "[i]f any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C. § 6321. The lien arises automatically upon assessment of a tax liability and continues until the lien is satisfied or becomes unenforceable after a lapse of time. 26 U.S.C. §§ 6321, 6322; *United States v. McDermott*, 507

---

[10] Robert A. LaBella had originally acquired the Subject Property from Somerset Shores Partnership by Warranty Deed on September 19, 1989 before transferring the Subject Property to the LaBella Revocable Trust on August 1, 1997. (Docs. 93-14, 93-15, 93-18).

U.S. 447, 452-55 (1993). Section 6321's "statutory language 'all property rights and rights to property,' . . . is broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *See United States v. National Bank of Commerce*, 472 U.S. 713, 720 (1985). "Stronger language could hardly have been selected to reveal a purpose to assure the collection of taxes." *Id.* at 720 (citation omitted); *see also United States v. Craft*, 535 U.S. 274, 283 (2002). Pursuant to § 6323(f), the United States filed Notices of Federal Tax Lien against Joseph D. Cornwell individually on November 23, 2010 and against "JOMICO as an alter ego of Joseph D. Cornwell" on May 7, 2018. (Doc. 42 ¶¶ 27-28; Doc. 93-1 ¶¶ 10-11; Docs. 93-4, 93-5). Section 7403 of the Internal Revenue Code authorizes the United States to bring a civil action to enforce a lien or "to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability." 26 U.S.C. § 7403(a). Under § 7403, all persons claiming a lien or interest in the subject property must to be named. 26 U.S.C. § 7403(b).

The United States now seeks a decree as to sale of the Subject Property in accordance with 26 U.S.C. § 7403(c), which provides in part:

> The [district] court shall, after the parties have been duly notified of the action, proceed to adjudicate all matters involved therein and finally determine the merits of all claims to and liens upon the property, and, in all cases where a claim or interest of the United States therein is established, may decree a sale of such property . . . and a distribution of the proceeds of such sale according to the findings of the court in respect to the interests of the parties and of the United States.

26 U.S.C. § 7403(c); *United States v. Christiansen*, 414 Fed. Appx. 218, 220 (11th Cir. 2011)(stating that "district courts have the right to order the sale of property encumbered by a tax lien, and 'to render such judgments and decrees as may be necessary or appropriate' to complete that sale").

The United States has established that Defendant Cornwell has an interest in the Subject Property, and since neither Cornwell nor his alter ego, JOMICO, LLC, have answered or otherwise

appeared in this action, they have filed no opposition to the United States' requested foreclosure of the Subject Property to satisfy the tax debt. The Court finds that the federal tax liens attach to the Subject Property and the United States is entitled to a decree of foreclosure and order of sale. *See Eckhardt*, 463 F. App'x 852; *Shades Ridge Holding Co.*, 888 F.2d at 728.

The United States has entered into Stipulations with the other parties claiming an interest in the property. (Docs. 28, 85, 92). In those Stipulations, the United States and these parties agree that the LaBella Revocable Trust's mortgage and the Orange County Tax Collector's judgment lien are superior to the federal tax liens; that the United States' federal tax lien against JOMICO, LLC is superior to the Somerset Shores Homeowner's Association, Inc.'s lien; and that the United States may seek a judgment of foreclosure in order to foreclose the federal tax liens; and that after costs of the sale are paid, LaBella Revocable Trust and the Orange County Tax Collector are entitled to be paid first, followed by the United States, followed by Somerset Shores Homeowner's Association, Inc., whose lien is subordinate to the United States' lien. (Docs. 28, 85, 92).

## CONCLUSION

Based on the foregoing, it is ordered as follows:

1. The United States' Motions for Default Final Judgment (Doc. 93) and Summary Judgment (Doc. 94) are **GRANTED**.

2. Judgment is entered in favor of the United States and against Joseph Cornwell in the amount of $1,021,304.36, plus statutory additions thereon arising subsequent to October 30, 2019, pursuant to 26 U.S.C. §§ 6621, 6622 and 28 U.S.C. § 1961(c), until the judgment is satisfied;

3. Defendant JOMICO, LLC is the alter ego of Joseph Cornwell and holds the real property located at 7313 Somerset Shores Court, Orlando, Florida 32819 (the "Subject Property"), more particularly described below, as the alter ego of Joseph Cornwell:

Lot 32, SOMERSET SHORES, according to the map or plat thereof as recorded in Plat Book 29, Page 53, Public Records of Orange County, Florida.

PARCEL ID# 26-23-28-8135-00320;

4. Pursuant to 26 U.S.C. §§ 6321, 6322, and 6323, the United States has valid, subsisting, and enforceable tax liens upon all property and rights to property belonging to defendant Joseph Cornwell including the Subject Property;

5. The federal tax liens in favor of the United States have attached to the Subject Property and can be foreclosed;

6. Defendant Dr. Phillips Community Association and Gloria LaBella have no interest in the Subject Property and are not entitled to any proceeds upon the sale of the Subject Property;

7. The United States shall file **within 30 days** a Decree of Foreclosure and Order of Sale setting forth the terms and conditions of sale of the Subject Property.

8. After entering the judgment directed by this Order, the Clerk is **DIRECTED** to close the file.

9. The Court retains jurisdiction for any further necessary orders related to sale of the Subject Property and distribution of the proceeds.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on February 11, 2020.

ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties